## MULLIN v DETROIT POLICE DEPARTMENT

Docket No. 69439. Submitted January 4, 1984, at Detroit.—Decided March 20, 1984.

Thomas D. Mullin requested a copy of the Detroit Police Department's traffic accident computer tape, pursuant to the Michigan Freedom of Information Act. The requested tape allegedly contains personal data on some 140,000 persons involved in traffic accidents in Detroit in 1980, plus information regarding police actions and investigations connected with those accidents. Upon the police department's denial of the request, plaintiff brought this action in Wayne Circuit Court. Sharon Tevis Finch, J., granted defendant's motion for summary judgment, holding that the requested records were exempt from disclosure under the Freedom of Information Act. Plaintiff appealed. *Held:*

1. The defendant's claim of exemption must be analyzed by balancing the individual's right of privacy against the act's purpose as stated in its preamble, with exemption being granted only where disclosure would constitute a clearly unwarranted invasion of privacy.

2. The information sought here intrudes into private affairs and contains potentially embarrassing private facts, therefore its disclosure would be an invasion of privacy. The perceived public benefits, plaintiff's proposed statistical study of traffic accidents in Detroit, are neither great nor consistent with the public policy behind the Freedom of Information Act. Disclosure, therefore, would be an unwarranted invasion of privacy.

3. The particular use to which the plaintiff plans to put the information is not a factor in analyzing the public benefits of disclosure, since the act contains no mechanism for control of the use of information once disclosed.

4. The nonexempt information contained on the computer

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 66 Am Jur 2d, Records and Recording Laws §§ 32, 36.
[2] 66 Am Jur 2d, Records and Recording Laws § 41.
    Validity, construction, and application of statutory provisions relating to public access to police records. 82 ALR3d 19.

tape has been made available by the defendant in other forms and the denial of plaintiff's request does not preclude his access to the information he desires.

Affirmed.

J. H. GILLIS, P.J., concurred in the result only.

1. RECORDS — FREEDOM OF INFORMATION ACT — INVASION OF PRIVACY — DISCLOSURE OF RECORDS.

Only information which, if disclosed, would constitute a "clearly unwarranted" invasion of privacy should be exempted from disclosure by a public agency under the Freedom of Information Act (MCL 15.231 *et seq.;* MSA 4.1801[1] *et seq.*).

2. RECORDS — FREEDOM OF INFORMATION ACT — DISCLOSURE OF RECORDS.

A claim of exemption from disclosure under the Freedom of Information Act is to be analyzed using the following criteria: (1) the burden of proof is on the party claiming exemption from disclosure; (2) exemptions must be interpreted narrowly; (3) the public agency shall separate the exempt and nonexempt material and make the nonexempt material available; (4) the agency must supply detailed affidavits describing the matters withheld; (5) justification of exemption must be more than conclusory; and (6) in cases involving law enforcement proceedings, the mere showing of a direct relationship between the records sought and an agency investigation is inadequate to justify exemption (MCL 15.143; MSA 4.1801[13]).

3. RECORDS — FREEDOM OF INFORMATION ACT — COURTS — INVASION OF PRIVACY — DISCLOSURE OF RECORDS.

A court, in determining whether material sought from a public agency pursuant to the Freedom of Information Act should be exempt from disclosure, must balance the invasion of privacy resulting from disclosure against the public benefit in disclosure to decide whether the invasion is "unwarranted"; if the invasion is found to be unwarranted, the material should be exempt from disclosure (MCL 15.243; MSA 4.1801[13]).

*Glen A. Opperthauser,* for plaintiff.

*Donald G. Pailen,* Corporation Counsel, and *Mary Ann Prost, Anthony W. Candela,* and *James A. Gizicki,* Detroit Police Department Legal Advisor Unit, for defendant.

Before: J. H. Gillis, P.J., and T. M. Burns and R. Robinson,* JJ.

R. Robinson, J. Plaintiff filed a written request for a copy of the Detroit Police Department's traffic accident computer tape under the authority of the Michigan Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* (FOIA). Defendant denied plaintiff's request based on MCL 15.243(1); MSA 4.1801(13)(1), which permits a public body to exempt from disclosure public records containing "(a) [i]nformation of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy". Defendant also claimed the records were exempt because they were compiled for law enforcement purposes and the disclosure would have the adverse effects listed under § 13(1)(b), and because they were used for developing intra-departmental policy but were available to persons upon request, § 13(1)(g)(iii). Upon defendant's denial, plaintiff brought this action in Wayne Circuit Court, which held in favor of defendant. On appeal, defendant apparently relies solely on the "invasion of privacy" exemption, § 13(1)(a).

The trial judge granted defendant's motion for summary judgment, concluding that the case was governed by *Kestenbaum v Michigan State University,* 414 Mich 510; 327 NW2d 783 (1982), in which an equally divided Court affirmed this Court's decision to deny a political organization's request for a computer tape containing the names and addresses of MSU students. *Kestenbaum v Michigan State University,* 97 Mich App 5; 294 NW2d 228 (1980).

---

* Former circuit judge, sitting on the Court of Appeals by assignment.

In construing its FOIA, Michigan has followed the lead of the federal courts, although the federal statute, 5 USC 552(b)(6), exempts "files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy", whereas the Michigan FOIA refers to "information of a personal nature" instead of to "files". The United States Supreme Court made clear in *Dep't of Air Force v Rose,* 425 US 352; 96 S Ct 1592; 48 L Ed 2d 11 (1976), that the appropriate approach for the courts was to balance the individual's right to privacy against preservation of the federal FOIA's basic purpose of opening agency action to public scrutiny. Exempting only "clearly unwarranted" invasions of privacy was the device adopted to achieve that balance, the Court explained. 425 US 372.

In the conflicting opinions offered by the Supreme Court in *Kestenbaum, supra,* each author identified a purpose of the FOIA in support of his position. Chief Justice FITZGERALD's opinion denying disclosure relied on the preamble of the statute, which states:

"It is the public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process." MCL 15.231(2); MSA 4.1801(1)(2).

Justice RYAN's opinion favoring disclosure relied instead on the wording of the exemption provision, § 13, to hold that all public records must be released, save those falling within one of the enumerated exceptions—which necessarily will permit the release of many public records that do not

particularly advance the interests of the general public. In *The Evening News Ass'n v City of Troy,* 417 Mich 481; 339 NW2d 421 (1983), the Court's first opportunity to construe the § 13(1)(b) exemption, the Court simply stated, "The objective, of course, is to secure disclosure of all pertinent information that is not exempt". *Evening News, supra,* p 516. This does not aid us in our analysis of § 13(1)(a), and to some extent begs the question of what is exempt. We must balance the invasion of privacy against something in order to decide whether it is clearly unwarranted. We prefer to read the public policy section as offering courts some guidance in applying the balancing test, just as the United States Supreme Court utilized the federal FOIA's purpose in *Dep't of Air Force v Rose, supra.*

The Supreme Court in *Evening News, supra,* derived the following rules to be used in analyzing a claim of exemption from disclosure under the FOIA:

"1. The burden of proof is on the party claiming exemption from disclosure. MCL 15.240(1); MSA 4.1801(10)(1).

"2. Exemptions must be interpreted narrowly. *Vaughn v Rosen,* 157 US App DC 340, 343; 484 F2d 820 (1973).

"3. '[T]he public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.' MCL 15.244(1); MSA 4.1801(14)(1); *Vaughn v Rosen,* 157 US App DC 345.

"4. '[D]etailed affidavits describing the matters withheld' must be supplied by the agency. *Ray v Turner,* 190 US App DC 290, 317; 587 F2d 1187 (1978).

"5. Justification of exemption must be more than 'conclusory', *i.e.,* simple repetition of statutory language. A bill of particulars is in order. Justification

must indicate factually how a particular document, or category of documents, interferes with law enforcement proceedings. *Campbell v Dep't of Health & Human Services,* 221 US App DC 1, 4-6, 10-11; 682 F2d 256 (1982); *Vaughn v Rosen,* 157 US App DC 347.

"6. The mere showing of a direct relationship between records sought and an investigation is inadequate. *Campbell v Dep't of Health & Human Services,* 221 US App DC 8-9." *Evening News, supra,* p 503.

Since the Court in that case was concerned solely with the exemption in § 13(1)(b), not all of these quidelines are applicable to our case, which concerns only § 13(1)(a).

Before balancing our competing claims, we inspect each to ensure that the requested disclosure really would be an invasion of privacy, and, conversely, that the disclosure would be to the public's benefit.

The information plaintiff seeks concerns approximately 140,000 people who were involved in 65,-000 to 70,000 accidents in Detroit in 1980. An affidavit from defendant's attorney informs us that the computer tape contains the names, addresses, dates of birth, license plate numbers, drivers license numbers, and home and business telephone numbers of all those persons. The tape also contains the names and assignments of police officers, reports of any arrests made pursuant to the accident, allegations of criminal conduct, and investigative techniques and procedures of law enforcement personnel. We find this affidavit sufficiently detailed to satisfy the *Evening News* requirement. Because this information "intrudes into private affairs" and includes potentially "embarrassing private facts", we are satisfied that divulging this information would be an invasion of those individuals' privacy. *Tobin v Civil Service Comm,* 416

Mich 661; 331 NW2d 184 (1982). Whether the invasion is "unwarranted" depends on the weight of the public benefit in disclosure. *Dep't of Air Force v Rose, supra.*

Plaintiff seeks the tape in order to conduct a statistical study of accidents which occurred in the City of Detroit in 1980. The study would define drivers, intersections, and highways with high occurrences of accidents, determining low and high risk accident factors. Plaintiff also proposes to study improvement of any accident factors. Plaintiff suggests these studies would be valuable in driver education schools and in highway design; he also argues that the public has a great interest in highway safety, and that accidents could be reduced or prevented as a result of his study, so presumably he plans to make the results public, which would result in some monetary benefit to him. He argues that an "indirect commercial gain" to him is not fatal to his request, and we agree, since that fact does not necessarily prevent the public from benefiting from disclosure of the desired information.

In so saying, we differ from this Court's reasoning in *Kestenbaum* and approve Chief Justice FITZGERALD's opinion in *Kestenbaum* that the particular use to which plaintiff puts the information is not the proper focus of analysis in scrutinizing the public benefits of disclosure. The Chief Justice rejected such a focus in part because "there is no mechanism in the FOIA by which use can be restricted once a public body has permitted release". *Kestenbaum,* 414 Mich 528. Although plaintiff has assured us that he would not contact the individuals nor make their names and addresses known, this fails to convince us that release of those names and addresses will therefore

be a public benefit and instead further supports defendant's contention that the release would be an unwarranted invasion of privacy. Nor do we see that release of this information would enable the public to monitor defendant's actions or in any way comport with the public policy motivating the FOIA. We are therefore unable to attach much weight to the public benefit in disclosing the computer tape.

Some federal courts have considered, in addition to the invasion of privacy and the public benefit of disclosure, whether the information is available from other sources. *Campbell v United States Civil Service Comm,* 539 F2d 58 (CA 10, 1976); *Simpson v Vance,* 208 US App DC 270; 648 F2d 10 (1980). In *Simpson* the Court decided that the fact that the personal information about Department of State employees was available elsewhere "reinforces the nonintimate nature of this material". *Simpson, supra,* p 275.

Michigan courts, however, have used the "available elsewhere" factor to buttress a decision to deny access to a particular source of information. This Court was persuaded in *Kestenbaum* that the computer tape was exempt from release because the public benefit—dissemination of political views —"could have been accomplished by other means without invading the privacy of the individual students". 97 Mich App 23. Chief Justice FITZGER-ALD's opinion affirming the Court of Appeals agreed, noting that the release of information in computer-ready form was a more serious invasion of privacy than disclosure of the same information in directory form:

"It is not seriously debated that the pervasiveness of computer technology has resulted in an ever-increasing erosion of personal privacy. There is available a larger

storehouse of information about each of us than ever before. Computer information is readily accessible and easily manipulated. Data available on a single tape can be combined with data on other tapes in such a way as to create new, more comprehensive banks of information. * * * The very existence of information in computer-ready form may serve to motivate an invasion of privacy." *Kestenbaum,* 414 Mich 531-532.

The other half of the Court, however, attacked this view, since the FOIA requires disclosure of public records, specifically defined to include computer tapes. MCL 15.232(e), 15.233(1); MSA 4.1801(2)(e), 4.1801(3)(1). The RYAN opinion also pointed out that the FOIA requires the public body to utilize the most economical means available for providing copies of public records, and the plaintiff in that case argued that copying the computer tape would be much faster and cheaper than creating a printed list of 44,000 names and addresses.

In the instant case, defendant asserts that the information plaintiff seeks is made available to persons upon request in the form of individual official police accident reports. Defendant also publishes the information each year, deleting the names and addresses, in its annual reports which are available at the public library. Plaintiff finds both of these alternatives unsatisfactory. He argues that the cost of purchasing 70,000 accidents reports at $2 apiece is unreasonable in light of the statute's directive to provide the copies most economically. And he complains that the annual reports contain errors.

Since the "available elsewhere" inquiry can be used both to support and to deny disclosure, we do not rest our decision on it. We do find, however, that defendant has met the requirement that it make the nonexempt material available, MCL

15.244(1); MSA 4.1801(14)(1); *Evening News, supra.* We also point out that denial of plaintiff's request does not preclude his access to the information he desires, since it is our understanding that he does not need all the information stored on defendant's computer tape.

Proceeding then to balance the invasion of privacy against the public benefit in disclosure, we find that defendant has met its burden of proving that the information falls within the exemption as a clearly unwarranted invasion of privacy. We agree with the trial court that this case falls "squarely within *Kestenbaum"* and, indeed, presents a stronger case for denying disclosure than did *Kestenbaum.* Besides the "standard identifying information" at issue in that case, defendant's tape also contains "additional embarrassing facts" —reports of arrest, criminal allegations, the very fact of having been involved in an automobile accident—which in our opinion pass even the dissent's stricter definition of invasion of privacy in *Kestenbaum.* Balanced against the public benefits in releasing this information—benefits which seem to be neither great nor consistent with the public policy behind the FOIA—we conclude that the invasion of privacy would be clearly unwarranted under the FOIA. The trial court correctly denied plaintiff's request.

Affirmed.

T. M. BURNS, J., concurred.

J. H. GILLIS, P.J., concurs in the result only.