IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS JUNE 1, 2005

## BYRON C. WELLS v. A. C. WHARTON, JR., ET AL.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH04-1826-3     D. J. Alissandratos, Chancellor**

_____

**No. W2005-00695-COA-R3-CV - Filed December 7, 2005**

_____

In this appeal, we are asked to determine multiple issues including whether the chancery court erred when it granted the defendants' motion to dismiss for failure to state a claim upon which relief may be granted. The plaintiff contends that there were numerous claims made in his complaint sufficient to survive defendants' motion to dismiss. The plaintiff, acting pro se, filed an appeal to this Court. We affirm in part and reverse in part and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed0 in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Byron C. Wells, Memphis, TN, *pro se*

Brian L. Kuhn, Shelby County Attorney; Craig E. Willis, Assistant County Attorney, Memphis, TN, for Appellees

### OPINION

### I.   FACTS & PROCEDURAL HISTORY

Byron Wells ("Mr. Wells" or "Appellant") is a resident of Shelby County who previously accessed public documents via the Shelby County Portal website. Using a computer program that he specially created, Mr. Wells would download public documents in bulk format. After access through the website overloaded its computer system, the Shelby County Government ("Shelby County") closed the website for several weeks. Shelby County eventually reopened access to the website but placed limitations on the amount of data that could be downloaded and the length of connection time. As a result, Mr. Wells could no longer download the documents he desires in bulk format via his specially created program. Mr. Wells attempted to go to the Shelby County offices

where the documents are kept to utilize that office's computers to download public records in bulk format. Mr. Wells could not download public records in the same manner, however, because (1) the computers provided for public use to access public records by the office cannot handle such request or (2) the office does not provide a computer for public use to access public records. At all times pertinent to this litigation, Mr. Wells could submit a written request to each office he desired public records from and receive those records in a paper copy.

On September 10, 2004, Mr. Wells filed suit against A.C. Wharton Jr., William R. Key, Chris A. Turner, Joseph A. Jackson, Shelby County, James Huntziker, and Kevin A. Gallagher (collectively "Defendants" or "Appellees"). Thereafter, Mr. Wells amended his complaint to allege that the limited access provided by Shelby County via the Internet violated the Tennessee Public Records Act; that the Shelby County Mayor's Office denied him copies of payment records between the Memphis Daily News and Shelby County; that officials denied him copies of public records in a format requested by Mr. Wells; and that Defendants' requirement that Mr. Wells must first present a written request before being allowed public access constituted a denial of access to public records.[1]

On October 6, 2004, the chancery court conducted a hearing on Defendants' motion to dismiss and motion to strike. At that time, the chancery court continued the hearing to allow both parties to discuss with each other the feasibility of creating a new system that would allow Mr. Wells the access he desired.

After the parties could not reach an amicable compromise, the chancery court conducted a hearing on Defendants' motion to dismiss, motion to strike, and motion for a protective order and/or to stay discovery as well as Mr. Wells's motion to disqualify Defendants' attorney and motion to strike exhibit obtained by misinformation. On March 2, 2005, the chancery court denied Appellant's motions; granted Defendants' motion to strike and motion to dismiss; and ruled that Defendants' motion for protective order and/or to stay discovery was moot. On March 3, 2005, Mr. Wells filed a motion for relief from judgment and/or motion to reconsider. On March 9, 2005, Mr. Wells filed a memorandum in support of his motion for relief from judgment and/or motion to reconsider. After a hearing on the motion, the chancery court denied Mr. Wells's motion for relief from judgment and/or motion to reconsider.

## II. ISSUES PRESENTED

Appellant, acting pro se, filed a timely notice of appeal to this Court and presented numerous issues for review, to include the following:

1.    Whether allegations of actual fraud, misrepresentation and other misconduct which may be criminal in nature state a claim upon which relief may be granted;

---

[1]In his original complaint, Mr. Wells asserted federal civil rights violations under section 1983 of title 42 of the United States Code. Mr. Wells, however, did not include these allegations in his amended complaint.

2. Whether an allegation that Shelby County operates its computer program contrary to Attorney General's opinions state a claim upon which relief may be granted;

3. Whether the chancery court should have disqualified Appellees' attorney from representing Appellees when there is a conflict of interest among Appellees;

4. Whether the chancery court should have disqualified Appellees' attorney from representing all defendants when the attorney writes an opinion stating to his clients that their actions are illegal and then defend them claiming that their actions are not illegal;

5. Whether the chancery court should have disqualified Appellee's attorney because Appellees may have committed a felonious act;

6. Whether Appellees' denial of public records because Appellant filed a lawsuit against Appellees state a claim upon which relief may be granted;

7. Whether Appellees may require any request for public records to be in writing.

8. Whether Appellees' denial of providing a copy of public records in a particular manner state a claim upon which relief may be granted;

9. Whether a claim that Appellees' preferentially treated the Memphis Daily News state a claim upon which relief may be granted;

10. Whether a county official must maintain a computer for the public to access public records;

11. Whether the chancery court can require Appellant provide computer programming for total access to all records for the entire public;

12. Whether the chancery court can demand Appellant to pay for all costs of reviewing county operations to make all records accessible to all members of the public;

13. Whether newly discovered evidence of a substantial change in the operations of Appellees states a claim upon which relief may be granted;

14. Whether the chancery court must provide judicial review of Appellant's claims before granting a motion to dismiss;

15. Whether the chancery court may refuse to allow Appellant to correct the record to state that he would be required to make payments for new computer programs for access to public records which are not available;

16. Whether the chancery court converted Appellees' motion to dismiss to a motion for summary judgment when it considered the County's claims that remote public access to its records would damage the records and that the County has adopted reasonable rules;

17. Whether Appellees refusal to grant a request for access to public records unless Appellant made a written request states a claim upon which relief may be granted; and

18. Whether the chancery court erred when it concluded that it did not understand the complaint and that it would let the Court of Appeals tell him what to do.

For the following reasons, we affirm in part and reverse in part and remand the decision of the chancery court.

## III. DISCUSSION

### A. *Issues Without Merit*

Appellant has presented numerous issues on appeal. The majority of these issues, however, are meritless. We address each issue in turn.

First, we address Appellant's assertion that his allegations of fraud, misrepresentation, and other conduct which may be criminal in nature orally presented at trial state a claim upon which relief may be granted. At trial, Appellant made several oral allegations that Appellees have committed a fraud upon the chancery court and made misrepresentations to the chancery court. These allegations may be a violation of the Tennessee Rules of Professional Conduct if proven true. *See* Tenn. Sup. Ct. R. 8, RPC 3.3 (2003). They do not, however, state a claim upon which relief may be granted. Appellant has not alleged that Appellees committed a fraud upon Appellant or made a misrepresentation to Appellant.

Even assuming that Appellees have committed a fraud or made a misrepresentation to Appellant, Appellant has not alleged fraud or misrepresentation within his complaint. When considering whether to grant a motion to dismiss for failure to state a claim upon which relief may be granted, a court may not hear "matters outside the pleadings." ***Trau Med of America, Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691, 696 (Tenn. 2002) (citing *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999)). Thus, this issue is without merit.

Second, we address Appellant's claims that the chancery court should have disqualified Appellees' attorney for any one of three reasons. Appellant claims there is a conflict of interest between the parties and that an attorney may not represent all parties dually represent Appellees. Appellant also claims that the Appellee allowed a conspiracy by Appellees to perpetrate a fraud upon the chancery court and to maintain that fraud upon the chancery court.

Appellant, as the movant, had the burden to prove that the chancery court should disqualify the County Attorney from representing Appellees. During the hearing on this motion, Appellant presented no evidence other than his unfounded allegations as proof. Thus, the chancery court was not in error when it denied Appellant's motion to disqualify.

Appellant has also asserted that the chancery court should have disqualified Appellees' attorney because the attorney's written opinion was in opposite of Appellees stance at trial. Appellee did not raise this issue at trial. Thus, Appellant has waived this issue. ***Barnhill v. Barnhill***, 826 S.W.2d 443, 458 (Tenn. Ct. App. 1991) (citing *Campbell County Bd. of Educ. v. Brownlee-Kesterson, Inc.*, 677 S.W.2d 457 (Tenn. Ct. App. 1984)) (holding that a party waives an issue when it raises it for the first time on appeal).

Third, we address Appellant's contentions that the chancery court cannot demand Appellant to pay for all costs of reviewing county operations to make all records accessible to all members of the public and that the chancery court cannot require Appellant provide computer programming for total access to all records for the entire public.

At trial, the chancery court did not issue a final order requiring Appellant to pay for any costs related to these issues, nor did it issue a final order adjudging whether a county official must maintain a computer for public access. This Court "will not decide theoretical issues based on contingencies that may or may not arise." *City of Memphis v. Shelby County Election Comm'n*, 146 S.W.3d 531, 539 (Tenn. 2004). To do so would "violate the established rule that appellate courts will not render advisory opinions." *Id.*

Fourth, we address Appellant's claims that Appellees' preferentially treated the Memphis Daily News state a claim upon which relief may be granted; that Shelby County operates its computer program contrary to Attorney General's opinions state a claim upon which relief may be granted; that newly discovered evidence of a substantial change in the operations of Appellees states a claim upon which relief may be granted; and that the chancery court may refuse to allow Appellant to correct the record to state that he would be required to make payments for new computer programs for access to public records which are not available.

In Appellees' motion to strike, Appellees petitioned the chancery court to strike out all allegations of Appellant's complaint that did not relate to Appellant's right of personal inspection of public records under section 10-7-505 of the Tennessee Code. Each of these issues does not pertain to Appellant's right of personal inspection. Appellant has not challenged the chancery court's grant of Appellees motion to strike on appeal. Thus, these issues are pretermitted.

Fifth, we address Appellant's claim that a county official's failure to maintain a computer for the public to access public records states a claim upon which relief may be granted. Section 10-7-123(a) of the Tennessee Code provides that a "county official *may* provide computer access . . . for inquiry only to information contained in the records of that office which are maintained on computer storage media in that office, during and after regular business hours." Tenn. Code Ann. § 10-7-123(a)(1) (emphasis added). Pursuant to this statute, a county official is not required to maintain a computer for the public to access public records. Thus, this issue is without merit.

Next, we address Appellant's claim that the chancery court converted Appellees' motion to dismiss to a motion for summary judgment when it considered the County's claims that remote public access to its records would damage the records and that the County has adopted reasonable rules.

If a trial judge receives matters outside the pleadings on a motion to dismiss for failure to state a claim upon which relief may be granted, "the motion shall be treated as a motion for summary judgment and disposed of as provided in [Tennessee] Rule [of Civil Procedure] 56." Tenn. R. Civ. P. 12.02; *see also Hixson v. Stickley*, 493 S.W.2d 471, 472-73 (Tenn. 1973).

-5-

Although Appellant claims that the chancery court heard matters outside the pleadings, the record does not reflect such an assertion. During its hearing on Appellees' motion to dismiss, the chancery court directed Appellees to "keep in mind that on a Motion to dismiss you have to stay within the confines of the four corners of the Complaint." Thus, we find this issue meritless.

Finally, we address Appellant's claim that the chancery court erred when it concluded that it did not understand the complaint and that it would let the Court of Appeals tell him what to do. First, this Court notes that Appellant has misstated what the chancery court stated at its hearing on Appellant's motion for relief from judgment and/or motion to reconsider. The chancery court specifically stated that "[p]erhaps the members of the Court of Appeals have a greater understanding of this than I do when they read your Complaint, but when I read your Complaint, I do not see a cause of action for which the Court can grant relief." Further, this is not an appealable issue.

### B. Motion to Dismiss

Appellant asserts that the chancery court erred when it granted Appellees' motion to dismiss for failure to state a claim upon which relief may be granted. Because Appellant has failed to appeal the chancery court's grant of Appellees' motion to strike, this Court is limited to determining whether Appellees' denial of inspection of payment records because Appellant is a party to a lawsuit against them; whether Appellees' denial of Appellant's requests to have certain public documents copied in a particular format; and/or whether Appellees' requirement that a citizen must first make a written request before a custodian of records grants him or her access to public records state a claim that may withstand a motion brought pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure.

When reviewing a 12.02(6) motion to dismiss, this Court will not consider any matter outside the pleadings. *Trau Med of America, Inc.*, 71 S.W.3d at 696 (citing *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999)). This Court shall liberally construe the pleadings and "presume all factual allegations to be true and giv[e] the plaintiff the benefit of all reasonable inferences." *Id.* (citing *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996)). A trial court's granting of a motion to dismiss must be upheld if "it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief." *Id.* (citing *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn. 1978)). We review any conclusions of law by the trial court under a *de novo* standard with no presumption of correctness. *Union Carbide Co. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

In counts four and five of his complaint, Appellant claims that he was denied copies of any payment records between Shelby County and the Memphis Daily News by Appellees. Appellant asserts that the Shelby County finance department denied his request sending him to the Shelby County mayor's office for the public records he sought and that the Shelby County mayor's office denied him access to public records because he was a party to a lawsuit.

Section 10-7-503 of the Tennessee Code requires that a county official may not refuse inspection of any public record to *any* citizen of Tennessee "unless otherwise provided by state law." Tenn. Code Ann. § 10-7-503(a) (2005). If a citizen has been denied access to public records by a government official, that citizen "may petition for access to any such record and to obtain judicial review of the actions taken to deny the access." Tenn. Code Ann. § 10-7-505(a) (2005). This Court must "broadly construe[] [this section of the Tennessee Code] so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d) (2005).

Our legislature has defined the term public document to include "all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance or *in connection with the transaction of official business by any governmental agency.*" Tenn. Code Ann. § 10-7-301(6) (2005) (emphasis added).

Appellant, a resident of Shelby County, has requested payment records from transactions conducted between the Memphis Daily News and Shelby County. Clearly, these records fall within the definition of a public record. If we view his allegations as true, Appellant, a citizen of Tennessee, has been denied access to public records. Thus, Appellant has stated a claim upon which relief may be granted.

Additionally, in counts one through four of his complaint, Appellant has asserted that he has been denied copies of various public records in electronic format, basing his claim on our Supreme Court's decision in *Tennessean v. Electric Power Board of Nashville*.

Appellant interprets our Supreme Court's decision in *Tennessean v. Electric Power Board of Nashville*, 979 S.W.2d 297 (Tenn. 1998), as to require a government official to provide public records in a computerized format. This interpretation, however, is in error. In *Tennessean v. Electric Power Board of Nashville*, the Tennessean Newspaper requested the names, addresses, and phone numbers of Nashville Electric Service's customers. *Id.* at 299. Nashville Electric Service denied this request asserting that it did not have a record that contained all of the requested information and that it would have to create a new record in order to meet this request. *Id.* The Supreme Court found that this denial was one of format and access and required the Nashville Electric Service to create a new record that contained all the information. *Id.* at 304. The Supreme Court, however, defined format of the record as the content included within the record not the manner in which Nashville Electric Service presented the information to the Tennessean. *Id.*

In this case, Appellant has not alleged that Appellees have denied him access to public records because Appellees would have to create a new record. Thus, *Tennessean v. Nashville Electric Service* is inapplicable in this case.

Section 10-7-505 of the Tennessee Code grants citizens of Tennessee the right to seek judicial review when an official denies his or her request to access public records. Tenn. Code Ann.

§ 10-7-505(a). Appellant has not alleged that he has been denied these records in any form. Appellant argues that Appellees have denied him copies of public records in electronic form.

While Tennessee courts have not addressed whether a citizen requesting public records may dictate the manner he or she receives it, several other jurisdictions have addressed this issue. For example, in *Farrell v. City of Detroit*, 530 N.W.2d 105 (Mich. Ct. App. 1995), the Michigan Court of Appeals found that custodians of public records must provide public records in the format that the citizen requests. *Farrell*, 530 N.W.2d 105. In *Farrell*, a newspaper reporter requested a copy of a computer tape that contained the "listing of all taxpayers who pay City of Detroit property taxes." *Id.* at 107. The City of Detroit responded to Mr. Farrell's request informing him that he could procure a printed copy of the public records he requested during normal business hours. *Id.* The district court granted summary judgment for the City of Detroit finding "that providing hard copies of the requested information was sufficient to comply with the FOIA." *Id.*

On appeal, Mr. Farrell argued that the trial court erred because it improperly emphasized "the information sought rather than the records requested." *Id.* at 107-08. Basing their decision on applicable Michigan law, the Court of Appeals of Michigan held that custodians of records must "provide the 'public record' . . . [citizens] request, not just the information contained therein." *Id.* at 109. The Court also found that the magnetic tape requested was a public record and that the City of Detroit was required to give a copy of the magnetic tape, not just a printout of the information in the tape. *Id.*

Likewise, in *American Federation of State, County & Municipal Employees, AFL-CIO v. County of Cook*, 555 N.E.2d 361 (Ill. 1990), the Illinois Supreme Court found that a custodian of records must provide the public record and not just the information contained within the public record. *Am. Fed'n of State, County & Mun. Employees, AFL-CIO*, 555 N.E.2d 361. In that case, representatives of the American Federation of State, County & Municipal Employees, AFL-CIO ("AFSCME") requested certain information. *Id.* at 362. Mr. Robert Lawson, another representative of the AFSCME, requested the same information on computer tape or diskette. *Id.* Mr. Thomas P. Beck, Cook County comptroller, denied Mr. Lawsons request stating that he had already provided the information to the AFSCME and that, in any event, he did not have to give a copy of the computer tape to Mr. Lawson. *Id.* After reviewing Illinois law, the Illinois Supreme Court found that computer tapes are public records and are subject to inspection and copying. *Id.* at 364-65.

Other jurisdictions have found that a custodian of records may dictate the manner in which public records are disseminated to a member of the public. For example, the United States District Court for the District of Columbia found that the U.S. Freedom of Information Act did not allow a citizen to specify the format in which he or she receives a public record. In *Dismukes v. Department of the Interior*, 603 F. Supp. 760 (D. D.C. 1984), the U.S. Department of the Interior (the "DOI") denied Mr. Philip Dismukes's request for "a copy of a computer tape listing by name and address the participants in the six 1982 Bureau of Land Management Simultaneous Oil and Gas Leasing bimonthly lotteries." *Dismukes*, 603 F. Supp. at 760-61. The DOI offered the information to Mr. Dismukes in microfiche form, advising Mr. Dismukes that this form was how the DOI routinely gave

this information to the public. *Id.* at 761. The District Court focused on the informational content of the record rather than the record itself and found that "[t]he agency need only provide responsive, nonexempt information in a reasonably accessible form, and its offer to plaintiff satisfies that obligation." *Id.* at 763.

Similarly, in *Tax Data Corporation v. Hunt*, 826 P.2d 353 (Colo. Ct. App. 1991), the Court of Appeals of Colorado, Division Two, found that custodians of public records may dictate the manner of access to public records. *Tax Data Corp.*, 826 P.2d 353. In *Tax Data Corporation*, a corporation requested tax information on real property from the Treasury Department of the City and County of Denver (the "Treasury Dept."). *Id.* at 354. Initially, employees of the Treasury Dept. permitted representatives of the corporation to access the Treasury Dept.'s computers, which were not designated for public use. *Id.* After discovering the corporation's activities, the treasurer of the City and County of Denver (the "Treasurer") informed the corporation that it could no longer use the Treasury Dept.'s computers to access the records, but if it would "leave a list of the properties of interest," the Treasury Dept. would send the corporation a computer printout containing the requested information. *Id.* Afterwards, the City of Denver Department of Revenue (the "Dept. of Revenue") "promulgated regulations governing public access to records open to inspection or copying under state and local laws." *Id.* at 355. The Court of Appeals declared that the "basic purpose of the Open Records Act is to insure the public's access to information which is a matter of public record, in a form which is reasonably accessible and which does not alter the contents of the information." *Id.* at 357. Reviewing the Dept. of Revenue's regulations in light of this purpose, it found that the issue presented was "one relating to the manner of access to public records which are electronically stored." *Id.* Finding that "the regulations grant[ed] reasonable access to electronically stored information," the Court of Appeals held that "the regulations d[id] not deny access to electronically stored public records." *Id.*

While these cases are not binding upon this Court, we find that these cases illustrate that the issue in the present case depends on whether the purpose of the Tennessee Public Records Act is one of access to the information contained within the public records or one of access to the public records in their normally kept form. In Tennessee, the purpose of the Public Records Act is to allow maximum access to the information contained within public records. *See Tennessean v. Nashville Elec. Serv.*, 979 S.W.2d 297 (Tenn. 1998). Thus, the issue presented here is not one of denial but one of manner of access.

In light of the purpose of the Tennessee Public Records Act, we conclude that the Tennessee Public Records Act does not require a custodian of records to provide public records in the manner a citizen requests. Section 10-7-506 of the Tennessee Code allows for citizens "to take extracts or make copies of public records . . . and to make photographs or photostats of the same" and allows the custodian of those records "to adopt and enforce reasonable rules governing the making of such extracts, copies, photographs or photostats." Tenn. Code Ann. § 10-7-506(a). This statute, however, does not mention the manner in which the custodian of the record may present the record to the citizen. *See Id.* § 10-7-506 (2005). In addition, section 10-7-121 of the Tennessee Code sets forth the requirements a custodian of records must meet if he or she decides to maintain the public records

by computer. *Id.* § 10-7-121. Under this section, in order for a custodian to maintain a public record on computer, the custodian must be able to provide "a paper copy of the information when needed or when requested by a member of the public." *Id.* § 10-7-121(a)(1)(D). Further, the section provides that "[n]othing in this section shall be construed to require the government official to sell or provide the media upon which such information is stored or maintained." *Id.* § 10-7-121(a)(2).

Allowing a custodian of records to choose the manner in which he or she presents public records to citizens is not unreasonable so long as that manner does not distort the record or inhibit access to that record. Further, the language of section 10-7-121 of the Tennessee Code appears to prohibit providing records in electronic form to the public. While this section does not specifically state that a computer printout is the only manner a citizen may view a public record that an official maintains on computer, it does state that the official must be able to provide a paper copy when requested by a member of the public and that maintaining a public record on a computer does not grant a citizen the right to inspect the media upon which the custodian stores public records. Accordingly, we find that Appellees' refusal to provide public records to Appellant in electronic form is not a claim upon which relief may be granted.

Finally, in count five of his complaint, Appellant asserted that Appellees initially required any request for public records be in writing before Appellees would grant Appellant access to certain public records states a claim upon which relief may be granted.

> Section 10-7-503 of the Tennessee Code states
>> [A]ll state, county and municipal records and all records maintained by the Tennessee performing arts center management corporation, except any public documents authorized to be destroyed by the county public records commission in accordance with § 10-7-404, shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

Tenn. Code Ann. § 10-7-503(a).

It is clear from the language of this statute that an official may refuse inspection of public records by a citizen only when state law provides for such non-disclosure. Nowhere in the Tennessee Public Records Act allows for an official to deny access to public records if a citizen does not first request access in writing. "When the words of a statute are plain, clear, and unambiguous, we merely look to the statute's plain language to interpret its meaning." *Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 24 (Tenn. 2000) (citing *Schering-Plough v. State Bd. of Equal.*, 999 S.W.2d 773, 775-76 (Tenn. 1999)). Therefore, Appellees' initial denial of Appellant's request for access to public records because Appellant did not first request access in writing states a claim upon which relief may be granted.

Accordingly, we affirm in part and reverse in part the chancery court's grant of Appellees' motion to dismiss for failure to state a claim upon which relief may be granted.

### C. Evidentiary Hearing

Finally, Appellant asserts that the chancery court erred when it did not hold an evidentiary hearing on his claims before granting a motion to dismiss.

Section 10-7-505 of the Tennessee Code states:

(a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in § 10-7-503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official, shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

(b) Such petition shall be filed in the chancery court for the county in which the county or municipal records sought are situated, or in any other court of that county having equity jurisdiction. In the case of records in the custody and control of any state department, agency or instrumentality, such petition shall be filed in the chancery court of Davidson County; or in the chancery court for the county in which the state records are situated if different from Davidson County, or in any other court of that county having equity jurisdiction; or in the chancery court in the county of the petitioner's residence, or in any other court of that county having equity jurisdiction. Upon filing of the petition, the court shall, upon request of the petitioning party, issue an order requiring the defendant or respondent party or parties to immediately appear and show cause, if they have any, why the petition should not be granted. A formal written response to the petition shall not be required, and the generally applicable periods of filing such response shall not apply in the interest of expeditious hearings. The court may direct that the records being sought be submitted under seal for review by the court and no other party. The decision of the court on the petition shall constitute a final judgment on the merits.

(c) The burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence.

(d)  The court, in ruling upon the petition of any party proceeding hereunder, shall render written findings of fact and conclusions of law and shall be empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section, and this section shall be broadly construed so as to give the fullest possible public access to public records.

(e)  Upon a judgment in favor of the petitioner, the court shall order that the records be made available to the petitioner unless:

  (1)  There is a timely filing of a notice of appeal; and

  (2)  The court certifies that there exists a substantial legal issue with respect to the disclosure of the documents which ought to be resolved by the appellate courts.

(f)  Any public official required to produce records pursuant to this part shall not be found criminally or civilly liable for the release of such records, nor shall a public official required to release records in such public official's custody or under such public official's control be found responsible for any damages caused, directly or indirectly, by the release of such information.

(g)  If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity.

As stated earlier, Appellant set forth in his complaint that he has been denied payment records between the Memphis Daily News and Shelby County and that the Shelby County mayor's office initially denied his request for access to these public records because he did not request in writing. "It is clear from the statute that there must be an evidentiary hearing if there are disputes concerning the nondisclosure of the records." *Jackson v. Hackett*, No.37, 1990 Tenn. App. LEXIS 684, at *6 (Tenn. Ct. App. October 3, 1990).  Thus, it was error for the chancery court not to require Shelby County to appear and show cause as to these claims.

## IV. CONCLUSION

For the reasons set forth herein, we affirm in part and reverse in part the chancery court's decision. We remand for further proceedings consistent with this opinion. Costs of this appeal are taxed equally to Appellant, Mr. Byron Wells, and his surety, and to Appellees, for which execution may issue if necessary,.

_____
ALAN E. HIGHERS, JUDGE