HOPKINS v DUNCAN TOWNSHIP

Docket No. 300170. Submitted October 11, 2011, at Marquette. Decided October 20, 2011, at 9:10 a.m. Leave to appeal denied, 491 Mich 908.

Douglas Hopkins brought an action in the Houghton Circuit Court, alleging that Duncan Township violated Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, when defendant failed to produce handwritten notes taken during meetings of the Duncan Township Board of Trustees by a board member for his personal use in response to plaintiff's FOIA request. The court, Charles R. Goodman, J., granted summary disposition in favor of defendant, holding that the notes were not part of the public record and, thus, the notes were not subject to disclosure under FOIA. Plaintiff appealed.

The Court of Appeals *held*:

Under FOIA, a public body must disclose all public records which are not specifically exempt under the act. A writing can become a public record after its creation if used by a public body in the performance of an official function, regardless of who prepared it. In this case, a member of the township's board of trustees habitually took notes in a personal journal to enhance his memory of events, including notes regarding township board meetings. The notes had not been read by other officials, had not been consulted by the member in the course of the board's decision-making, had not been used by the board, and had been retained at the member's sole discretion. Accordingly, the notes had not been used by a public body in the performance of an official function and had not become a public record subject to disclosure. Instead, the notes were personal in nature. The trial court properly granted summary disposition.

Affirmed.

RECORDS — FREEDOM OF INFORMATION ACT — WORDS AND PHRASES — PUBLIC RECORDS — PERSONAL NOTES.

Under the Freedom of Information Act, a public body must disclose all public records which are not specifically exempt under the act; a writing can become a public record after its creation if used by a public body in the performance of an official function, regardless of

who prepared it; handwritten notes taken by a member of a township board of trustees for his or her personal use, not circulated among other board members, not used in the creation of the minutes of any meetings, and retained or destroyed at the member's sole discretion are not public records subject to disclosure under the act (MCL 15.232[e]).

*Hahner Law Offices, P.C.* (by *Mikael G. Hahner*), for Douglas Hopkins.

*Vairo, Mechlin & Tomasi, PLLC* (by *David R. Mechlin*), for Duncan Township.

Before: STEPHENS, P.J., and SAWYER and K. F. KELLY, JJ.

PER CURIAM. Plaintiff appeals as of right an order granting summary disposition in favor of defendant on plaintiff's claim that defendant violated Michigan's Freedom of Information Act (FOIA), MCL 15.231 *et seq.* We affirm, holding that handwritten notes of a township board member taken for his personal use, not circulated among other board members, not used in the creation of the minutes of any of the meetings, and retained or destroyed at his sole discretion, are not public records subject to disclosure under FOIA.

### I. THE PARTIES' PLEADINGS

On March 18, 2010, plaintiff filed a complaint alleging a FOIA violation. Plaintiff, a Duncan Township resident, claimed that defendant had failed to produce records plaintiff had requested on September 9, 2009, specifically "Copies of any notes taken by any elected official during any Duncan Township Board or Zoning Board meetings over the past 12 months[.]" Although defendant claimed that no zoning board meetings had been held, it did not address meetings held by the

Duncan Township Board of Trustees. Plaintiff alleged that a videotape revealed board members taking notes during the meetings.

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(10). Defendant provided the affidavits of the township board members, which revealed that only one individual—Frank Pentti—took notes at the meeting. Because the notes were strictly for his personal use, kept in his personal journal, not shared with other members of the board, and never placed in defendant's files, defendant argued that Pentti's notes did not constitute "public records." MCL 15.232(e). Pentti specifically averred that "[a]ny notes that I may have taken during Township Meetings were written in my personal diary, which also includes notes of meetings that [I] had with other groups such a [sic] local historical society."

Plaintiff filed a response to defendant's motion, arguing that Pentti's notes were, in fact, public records. Pentti acknowledged that he took notes at the meetings, and video footage from such meetings confirmed that he went back into his notes to advise the board of his recollection of what they had discussed at earlier meetings. Additionally, plaintiff argued, defendant never claimed that the notes were exempt and never specifically denied plaintiff's FOIA request, as was required. Plaintiff asserted that defendant had failed to prove that defendant's refusal to disclose the notes was correct. Included in plaintiff's response were DVDs of defendant's meetings for August, September, and October 2009.

At his deposition, Pentti testified that he was a trustee on the Duncan Township Board of Trustees. Pentti was also secretary of the Kenton Historical Society. The township board had two trustees, a super-

visor, a clerk and a treasurer. The clerk conducted her
business from her residence and from a store that she
owned. The town's records were held jointly with the
clerk and in the treasurer's office, which consisted of a
desk and a chair in the Sidnaw town hall. There was
also a building next door to the town hall where other
"ancient" records were found, but "certainly, all active
township records would be either with the clerk or the
treasurer." Pentti brought his notebook to the deposi-
tion, which he referred to as his personal diary. The
notebook contained a "mishmash of everything." Pentti
did not use the notes in the performance of his duties as
a trustee; rather, "it's something I started doing in
college; and I found out that if I write things down, they
stick—things stick with me better." Pentti did not refer
to the notes in the course of participating in township
board meetings. He did not believe that he used the
notes for any purpose other than the "mnemonic thing.
I—seems that if I write it down, it goes in up here."
Pentti saw other members jot down notes on copies of
budgets and similar memoranda, but had no idea what
the other board members did with their notes. Pentti
deposited copies of the budget, agenda, and other notes
in the garbage. Pentti did not believe that he ever
referred to his notes during a township meeting with
other board members, nor had he ever referred to his
notes in discussing matters with any citizen. He had
never been asked to refer to his notes by the clerk in
preparation of the minutes. During direct examination
by plaintiff's attorney, Pentti testified:

   *Q.* Okay. The notes that you make at the meetings,
you're making those notes while you're participating as a
trustee for Duncan Township, correct?

   *A.* I would not say they're an inherent part of my
participation; it's just the way I have existed since college.

*Q.* Okay.

*A.* I jot things down.

*Q.* But when you do that, you're acting as a trustee of the township?

*A.* At the board meeting, yes.

During cross-examination by defense counsel, Pentti testified:

> *Q.* Mr. Pentti, the preparation of your personal notes that were made during these township board meetings, were they prepared in any way in connection with either your role or responsibilities as a member of the township board.
>
> *A.* No, I think they're just personal notes.

At her deposition, Shirley Wittingen testified that she was the township clerk. Wittingen also owned a convenience store. She was responsible for bookkeeping, recordkeeping, taking minutes of the meetings, and running elections. All of the board's files were kept in Wittingen's store. Some were in storage in a building next to the town hall. When Wittingen got plaintiff's request for documents, she went into her files to see if anything was there. She also asked the board members whether they had any notes. Pentti "was the only one that said that he had some notes. But they were his personal notes; they were not in the files." Wittingen had never reviewed Pentti's notes. Wittingen had not received official training about FOIA, but had a reference book that she consulted. She admitted that she never told plaintiff about Pentti's notes because she believed that they were not subject to disclosure.

David Johnson provided an affidavit, averring that he had attended several township board meetings, including those that took place in September and Octo-

ber 2009. Johnson witnessed Pentti "making notes in a spiral bound notebook." Additionally:

> 5. During one of the meetings I attended Skye Johnson inquired of the Board whether her home was in compliance and to what agencies she had been referred to.
>
> 6. At that meeting, I observed Frank Pentti refer to his notebook and turn pages back and he told her the agencies she was referred to.

## II. HEARING ON DEFENDANT'S MOTION

At the motion hearing, defense counsel relied on *Howell Ed Ass'n MEA/NEA v Howell Bd of Ed*, 287 Mich App 228; 789 NW2d 495 (2010), arguing that Pentti's notes were not public documents because they were not stored or retained by the township in the performance of an official function. Instead, plaintiff sought disclosure of Pentti's personal journal. Defendant did not argue that the documents were exempt from disclosure, but that they were not public in the first place.

In response, plaintiff claimed there was never a proper denial given; rather, defendant had made it appear as if no notes existed. Plaintiff asked the court to conduct an in camera review of Pentti's notebook. Plaintiff contended that because there was no centralized filing and recordkeeping system, defendant could not argue that the documents needed to be under the control of the township and that the heart of the matter was that Pentti had taken notes in his official capacity and the clerk was under an obligation to search for them. Citing *Walloon Lake Water Sys, Inc v Melrose Twp*, 163 Mich App 726; 415 NW2d 292 (1987), plaintiff argued that an otherwise personal item may become a public record.

Defendant argued that an in camera review would only be appropriate if the trial court first determined that the notes were public records.

The trial court declined to review the notes in camera. It ruled:

> Here's what I'm thinking; Your motion is a (C)(10) motion. Um, I'm wondering if (C)(8)—I don't think that personal notes are public records. All right. Um, I think personal notes are just that. Personal notes. They're not intended to be a public record. They're intended to aid the maker of the note for whatever reason, maybe doesn't feel like he's got a good memory, or she's got a good memory; just a note taker. Some people are note takers, they're writing all the time.
>
> \*　　\*　　\*
>
> And I don't think that that person's, um, the way they function means that everything that they write down is all of a sudden part of the public record. Um, the notes of meetings that become a part of the record are the clerk's. That's within the official duty of the clerk, so obviously those minutes are public record. But someone who's a member of the board or whatever, and who's saying–writes down a note, ah, Mr. Smith from the audience indicated he's not for this ordinance, or whatever, just to keep track so when he wants to talk about it later he can reference Mr. Smith out there. I don't think that becomes a public record. That's a record of an individual member for the individual's own personal use. I don't think it's in furtherance, really, of the official business. And I think the *Howell* case used that language. Um, where was that, in talking about the emails they said, "However, the school district does not assert that its backup system was purposely designed to retain and restore personal emails, or that those emails have some official function." So I got the impression there has to be some official function. And I don't see an official function to an individual member's notes. It's to assist that individual member.

The trial court entered judgment in defendant's favor. Plaintiff now appeals as of right.

### III. STANDARD OF REVIEW

Although the trial court made some indication that it would entertain an MCR 2.116(C)(8) motion, it is clear from the record that, in fact, the motion was granted pursuant to MCR 2.116(C)(10) because the court had to go beyond the mere pleadings in order to conclude that the notes at issue were not subject to disclosure. See *Capitol Props Group, LLC v 1247 Center Street, LLC*, 283 Mich App 422, 425; 770 NW2d 105 (2009). This Court reviews de novo a trial court's decision on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Summary disposition under MCR 2.116(C)(10) is appropriate only when the moving party can demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Rose v Nat'l Auction Group*, 466 Mich 453, 461; 646 NW2d 455 (2002). This Court also reviews de novo a trial court's legal determination in a FOIA case. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470-472; 719 NW2d 19 (2006).

### IV. STATUTORY LAW AND CASELAW

MCL 15.231(2) provides that

[i]t is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.

Under FOIA, a public body must disclose all public records that are not specifically exempt under the act. MCL 15.233(1); *Coblentz v City of Novi*, 475 Mich 558, 571, 573; 719 NW2d 73 (2006). The exemptions are specifically enumerated in MCL 15.243, but are inapplicable to this case because defendant does not claim that the information sought was exempt from disclosure; rather, defendant maintains that the information was not a public record subject to disclosure, obviating the need to address whether the information was protected by any of the enumerated exemptions.

MCL 15.232(e) defines "public record" as follows:

> "Public record" means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created. Public record does not include computer software. This act separates public records into the following 2 classes:
>
> (*i*) Those that are exempt from disclosure under [MCL 15.243].
>
> (*ii*) All public records that are not exempt from disclosure under [MCL 15.243] and which are subject to disclosure under this act.

A "writing" includes all means of recording or retaining meaningful content, including handwriting. MCL 15.232(h); *Patterson v Allegan Co Sheriff*, 199 Mich App 638, 639-640; 502 NW2d 368 (1993). A writing can become a public record after its creation if possessed by a public body in the performance of an official function, or if used by a public body, regardless of who prepared it. *MacKenzie v Wales Twp*, 247 Mich App 124, 129; 635 NW2d 335 (2001); *Detroit News, Inc v Detroit*, 204 Mich App 720, 723-724; 516 NW2d 151 (1994). Mere possession of a record by a public body does not, however, render it a public record; a record must be

used in the performance of an official function to be a public record. *Howell Ed Ass'n*, 287 Mich App at 236.

At the heart of this case is whether Pentti's notes were taken in the performance of an official function. If so, then the notes are subject to disclosure under FOIA. The goal in interpreting a statute is to ascertain the Legislature's intent. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548–549; 685 NW2d 275 (2004). The first step in doing so is looking to the language used. *Id.* at 549. Effect must be given to each word, reading provisions as a whole, and in the context of the entire statute. *Green v Ziegelman*, 282 Mich App 292, 301–302; 767 NW2d 660 (2009). If the language is clear and unambiguous, the statute must be applied as written. *Id.* at 302. In such instances, judicial construction is neither necessary nor permitted. *People v Shakur*, 280 Mich App 203, 209; 760 NW2d 272 (2008). Further, because FOIA is a prodisclosure statute, it must be broadly interpreted to allow public access. *Practical Political Consulting, Inc v Secretary of State*, 287 Mich App 434, 465; 789 NW2d 178 (2010).

Plaintiff relies on *Walloon Lake*, 163 Mich App 726, as well as this Court's unpublished opinion *WDG Investment Co, LLC v Mich Dep't of Mgt & Budget*, unpublished opinion per curiam of the Michigan Court of Appeals, issued October 25, 2002 (Docket No. 229950), in support of his position that Pentti's personal notes were transformed into public documents.

In *Walloon Lake*, the plaintiff sought disclosure of a personal letter that had been read into the record at a township meeting. This Court concluded that because the letter was read into the record at a public meeting and its contents were considered by the township board, it became a public record subject to disclosure under FOIA. *Walloon Lake*, 163 Mich App at 729.

> Without opining as to what extent an outside commu-
> nication to an agency constitutes a public record, we
> believe that here, once the letter was read aloud and
> incorporated into the minutes of the meeting where the
> township conducted its business, it became a public record
> "used . . . in the performance of an official function." [*Id.* at
> 730.]

In deciding that the letter had been "used" for purposes
of the FOIA, this Court explained:

> To be fully aware of the affairs of government, inter-
> ested citizens are entitled to know not only the basis for
> various decisions to act, but also for decisions not to act. To
> further this purpose, we must construe the FOIA in such a
> manner as to require disclosure of records of public bodies
> used or possessed in their decisions to act, as well as of
> similar records pertaining to decisions of the body not to
> act. Under this holding, not every communication received
> by a public body will be subject to disclosure. But where, as
> here, the content of a document is made part of the
> minutes of the body's meeting where it conducts its official
> affairs and the content of the document served as the basis
> for a decision to refrain from taking official affirmative
> action, that document must be considered a "public
> record," as defined by the FOIA. [*Id.* at 730-731.]

Thus, a private letter became public because it was read
into the record of the township meeting and used by the
township board to resolve a specific issue. In this case,
Pentti's notes were never read into the record, nor is
there any evidence that the notes were used in the
township's decisions. The notes were kept for Pentti's
personal use and were not provided to any of the other
board members.

In *WDG*, the plaintiffs sought "all notes or other
writings" of those individuals who participated in
evaluating submitted proposals in connection with the
construction of a public facility, regardless of whether
individuals were employed by the agency. *WDG*, unpub

op at 7. The defendants argued that there was no duty to disclose such "personal" notes. In a footnote, this Court stated, "It is not at all clear from the record what defendants mean by 'personal' notes. We therefore decline to address this argument at this time." *Id.* at 7 n 4. This Court went on to hold that the defendants had failed to meet their burden to justify the nondisclosure given that the defendants only argued that the notes were located in other departments. *Id.* at 8. "[E]ven if the requested records were not retained by the DMB, the DMB was still under a duty to conduct a reasonable search to request and locate the records." *Id.* at 7. Again, the case is not helpful to plaintiff. This Court specifically declined to decide whether personal notes could be considered public documents; instead, the focus was on the duty of the defendants to conduct a reasonable search to request and locate documents, which they clearly did not do. In contrast, the township clerk asked the individual township board members if they had any notes from the year's meetings. Only Pentti had notes, which he claimed were in his personal diary.

During the motion hearing, the parties and the trial court referred to the *Howell Ed Ass'n* case, but the trial court hesitated in relying too heavily on the case, as the matter had been appealed to the Michigan Supreme Court. Since that time, however, the Michigan Supreme Court has denied leave to review.[1] Though not directly on point, *Howell Ed Ass'n* is instructive. It involved a "reverse" FOIA issue, in which a teacher's union objected to the release of e-mails between the union and its members, arguing, among other things, that personal e-mails were not "public records." *Howell Ed*

---

[1] *Howell Ed Ass'n MEA/NEA v Howell Bd of Ed*, 488 Mich 1010 (2010), recon den 489 Mich 976 (2011).

*Ass'n*, 287 Mich App at 232. The plaintiffs' appeal was limited to whether the trial court properly concluded that the e-mails generated through the school district's e-mail system, retained and stored by the district, were public records subject to disclosure. *Id.* at 235. This Court found that the e-mails at issue had nothing to do with the essential operations of the schools and declined to find that they were equivalent to student information. *Id.* at 236-237. Further, this Court noted that

> "unofficial private writings belonging solely to an individual should not be subject to public disclosure merely because that individual is a state employee." We believe the same is true for all public body employees. Absent specific legislative direction to do so, we are unwilling to judicially convert every e-mail ever sent or received by public body employees into a public record subject to FOIA. [*Id.* at 237, quoting *Kestenbaum v Mich State Univ*, 414 Mich 510, 539; 327 NW2d 783 (1982).]

The fact that the district maintained and saved the e-mails did not render e-mails sent by its employees while at work subject to release under FOIA. *Howell Ed Ass'n*, 287 Mich App at 237. This Court easily reconciled its finding with *Walloon Lake*, finding that it is possible that a personal document can become public, but only because "[the document's] subsequent use or retention 'in the performance of an official function . . . rendered [it] so." *Id.* at 243. This Court also referred to *WDG*, and noted that while the case declined to define the word "personal," it nevertheless offered "limited guidance." *Id.* at 244. "[T]o the degree [*WDG*] is helpful, it indicates that individual notes taken by a decisionmaker on a governmental issue are still public records when they were taken in furtherance of an official function." *Id.*

Defendant also cites *Porter Co Chapter of the Izaak Walton League of America, Inc v United States Atomic*

*Energy Commission*, 380 F Supp 630 (D Ind, 1974), in support of its position. Federal court decisions regarding whether an item is an "agency record" under the federal freedom of information act, 5 USC 552, are persuasive in determining whether a record is a "public record" under the Michigan FOIA. *MacKenzie*, 247 Mich App at 129, n 1. In *Porter*, the plaintiffs requested "[a]ssorted generally untitled, undated and uncirculated handwritten personal notes of [Atomic Energy Commission (AEC)] and Argonne National Laboratory personnel[.]" *Porter*, 380 F Supp at 632. In granting the defendant's motion for summary judgment, the district court noted that uncirculated handwritten personal notes were not subject to disclosure:

> In executing their responsibilities relating to the AEC's health and safety and environmental reviews, individual AEC staff members frequently prepare assorted handwritten materials for their own use. Such materials are not circulated to nor used by anyone other than the authors, and are discarded or retained at the author's sole discretion for their own individual purposes in their own personal files. The AEC does not in any way consider such documents to be 'agency records,' nor is there any indication in the record that anyone other than the author exercises any control over such documents. [*Id.* at 633.]

### V. APPLICATION OF LAW TO THE FACTS

Plaintiff argues that Pentti took his notes while acting in his official capacity as an elected official at a public meeting. Defendant does not dispute that Pentti's handwritten notes are a "writing" for purposes of FOIA. MCL 15.232(h). Nor does defendant argue that a writing that is otherwise private may become a public record subject to disclosure if the writing is possessed by the public body in the performance of an official function or if it is used by the public body. Defendant's

argument is simply that Pentti's handwritten notes were not in furtherance of an *official function*; rather, Pentti's notes, taken voluntarily, not circulated among other board members, not used in the preparation of meeting minutes, and retained at his sole discretion were private writings not subject to disclosure under FOIA. We agree.

The town's records were held jointly with the clerk and in the treasurer's office, which consisted of a desk and a chair in the Sidnaw town hall. There was also a building next door to the town hall where other "ancient" records were found, but "certainly, all active township records would be either with the clerk or the treasurer." The clerk conducted her business from her residence and from a store that she owned. When plaintiff's FOIA request was made, the clerk immediately went to those records. Finding nothing there, she then asked each board member whether they had notes of the meetings. Pentti reported that he had kept notes in his personal diary, where he also kept notes of his other affairs, including as secretary of the Kenton Historical Society and a "mishmash of everything." Pentti took notes in hopes that in so doing, he would better retain information. Pentti did not refer to the notes in the course of participating in township board meetings. Plaintiff claims otherwise, pointing to the sworn affidavit of David Johnson, who specifically averred that during one of the meetings he saw Pentti refer to his prior notes in answer to an inquiry from a citizen who asked to whom she had been previously referred for bringing her home into compliance with local building ordinances. Even accepting the averment as true, it appears that Pentti did little other than offer the citizen contact information. Such information had nothing to do with substantive decision-making.

Pentti saw other township board members jot down notes, but had no idea what the other board members did with their notes. For his part, Pentti often deposited copies of the budget, agenda, and other notes in the garbage. None of the board members shared notes with one another. The clerk never asked Pentti to refer to his notes in her preparation of the minutes, nor were the notes circulated among other board members. When asked if the notes were prepared in connection with his responsibilities as a member of the board, Pentti testified, "No, I think they're just personal notes."

The foregoing facts demonstrate that Pentti's notes were never in the township's possession, nor were they used in the performance of an official function. Regardless of plaintiff's opinion regarding the township's loose recordkeeping, the fact remains that all of the public records relative to the township board meetings were kept and retained by the township clerk, either at her home or the convenience store she owned. The clerk was responsible for preparing the minutes of the meetings and admitted that she never saw nor read any of Pentti's notes. The fact that Pentti's notes were not for substantive decision-making or recordkeeping is supported by the fact that Pentti, alone, retained the records at his sole discretion. Unlike *Walloon Lake*, in which a private letter was read into the record and incorporated into the board's substantive decision-making, there is absolutely no support that anyone other than Pentti read the notes. *Howell Ed Ass'n* presented the opposite situation, in which the documents (e-mails) at issue were retained by the agency. This Court found that the mere possession of the material sought did not convert an otherwise private writing into a public document subject to disclosure. Quite the opposite:

> "[U]nofficial private writings belonging solely to an individual should not be subject to public disclosure merely because that individual is a state employee." We believe the same is true for all public body employees. Absent specific legislative direction to do so, we are unwilling to judicially convert every e-mail ever sent or received by public body employees into a public record subject to FOIA. [*Howell Ed Ass'n*, 287 Mich App at 237, quoting *Kestenbaum*, 414 Mich at 539 (citation omitted).]

Just as not every e-mail prepared and sent by a teacher on school-owned computer equipment was subject to disclosure, not every handwritten note prepared by a member of a public body, not otherwise used by the body's remaining members, should be subject to disclosure. Instead, individual notes taken by a decision-maker on a governmental issue are only a public record when the notes are taken in furtherance of an official function. *Howell Ed Ass'n*, 287 Mich App at 244.

We believe that the case most on point is *Porter*, which concluded that untitled, undated and uncirculated handwritten personal notes were not subject to disclosure under the federal freedom of information act. *Porter*, 380 F Supp at 633. Notes not considered by other members of the board and retained or disposed of at the discretion of the writer cannot be anything other than personal in nature. *Porter* also states:

> Disclosure of such personal documents would invade the privacy of and impede the working habits of individual staff members; it would preclude employees from ever committing any thoughts to writing which the author is unprepared, for whatever reason, to disseminate publicly. Even if the records were 'agency records,' their disclosure would be akin to revealing the opinions, advice, recommendations and detailed mental processes of government officials. Such notes would not be available by discovery in ordinary litigation. [*Id.*]

Finally, given that Pentti's notes were not public records subject to disclosure under FOIA, plaintiff's claims that defendant failed to properly respond to the FOIA inquiry pursuant to MCL 15.235(2) and (3) are without merit. Plaintiff's claim that the trial court should have conducted an in camera review of the notes under MCL 15.240(4) is also without merit because the statute specifically provides that a "court, on its own motion, may view the public record in controversy in private before reaching a decision." Because Pentti's notes are not public records kept in the furtherance of a governmental function, an in camera review was unnecessary.

### VI. CONCLUSION

Handwritten notes of a township board member taken for his personal use, not circulated among other board members, not used in the creation of the minutes of any of the meetings, and retained or destroyed at his sole discretion are not public records subject to disclosure under FOIA.

The trial court did not err in granting defendant summary disposition.

Affirmed.

STEPHENS, P.J., and SAWYER and K. F. KELLY, JJ., concurred.